ADELE MAHER, as Executrix, etc., of WILLIAM J. BYRNES, Deceased, Respondent, v. MARY J. BYRNES, Appellant.

First Department, April 5, 1940.

*Samuel S. Burman* of counsel [*James V. Kilroe,* attorney], for the appellant.

*Jerome S. Rosedale* of counsel [*Max Schoengold* with him on the brief], for the respondent.

CALLAHAN, J. This action was commenced by William J. Byrnes, who died after the entry of judgment appealed from, to impose a trust on the proceeds of two life insurance policies issued on the life of his father, James J. Byrnes.

Originally the wife of James J. Byrnes was beneficiary under these policies. James J. Byrnes' wife died in November, 1937, and James thereupon changed the beneficiary to Mary J. Byrnes, his sister, the defendant.

From the time of his mother's death to the time of his own death, William J. Byrnes was confined in a hospital as a tubercular patient. James J. Byrnes himself was ill at the time of his wife's death, and required hospitalization. He entered a hospital for treatment. Shortly before doing so he told his sister (the defendant) that he would come to live with her when he was discharged from the hospital. Defendant thereupon moved into a larger apartment to accommodate her brother, but he never recovered and never lived with her.

Before going to the hospital James J. Byrnes named defendant as beneficiary of his life insurance policies. James was employed by the insurance company which issued the policies. In changing the beneficiary he made no provision placing the proceeds in trust, though such an arrangement might have been made.

Plaintiff produced a witness, one Bellew, the undertaker, who had buried James J. Byrnes' wife, and who was apparently on friendly terms with James J. Byrnes. This witness testified to a conversation between James J. Byrnes and the defendant in the witness' presence, wherein James J. Byrnes is alleged to have said to defendant:

" ' I want to take care of that boy,' and he said ' I am going to take this policy and turn it over to you, with the understanding that I don't think that I will be able to work much longer and I want you to be compensated for anything you may do for me, that is, during my time ' — if he was disabled to work, that he wanted Miss Byrnes to receive compensation for her board and meals or whatever she might spend on him.

" Q. On Mr. James Byrnes, the father? A. Yes, sir; and *that she was to take care of William Byrnes.* Q. With the rest of the money? A. Yes; and he spoke to her about that and Miss Byrnes said, ' All right, Jim.' Q. She will do that? A. She would take care of it. Q. You heard her say that she would agree to do that? A. That's right."

The defendant denied that there was any condition imposed on her with respect to the proceeds of the policies. She said that her brother said he would come and live with her and that the understanding was that she might have to pay premiums on one policy if and when the insured retired from business.

It is upon the foregoing testimony that the trial court found that a trust was impressed upon the proceeds of the policies in the hands of the defendant, in favor of William J. Byrnes, the son, and upon such finding the court directed that all of the proceeds of the policies be turned over to William J. Byrnes. The trial justice stated orally from the bench that he believed that the arrangement was that

James J. Byrnes made the change of beneficiary for the purpose of protecting his sister if she was put to any expense on his account, but as she had never been put to any expense outside of possibly the expense of moving from one apartment to another, and as James J. Byrnes had never lived with her, the son William should get all the money.

We think that such a finding was not supported by the evidence. We also find that the judgment was not in accordance with the demands made in the complaint, and that some of the findings of fact are without any support in the evidence.

It is to be noted that the witness Bellew stated that the arrangement was that the defendant was to receive the insurance to protect herself against any expense incurred in taking care of the insured; and that she was also to " take care " of William J. Byrnes, with the rest.

Even if such a conversation concerning the care of William J. Byrnes took place, it seems to us that it is not sufficient to impose an obligation on the part of the trustee to turn over all the principal to the alleged beneficiary, at least in the absence of proof that said beneficiary needed such money for his care. William J. Byrnes recognized this, for, in the complaint, he alleged in paragraphs 4 to 6:

" That the defendant agreed to pay the said sum of Three Thousand Four Hundred ($3,400) Dollars to the plaintiff herein as plaintiff required the said monies.

" That thereafter and on or about the 12th day of January, 1938, said James J. Byrnes died.

" That since his death the plaintiff did require medical care and attention, necessaries of life, and support, and has requested defendant to pay to him the said sum of Three Thousand Four Hundred ($3,400) Dollars or any part thereof sufficient to provide for him, but the defendant refuses and neglects either to pay said sum or to secure the future payment thereof, or to do anything in relation thereto, and claims that she is under no obligation to fulfill said promise and holds the said property free from any claim by plaintiff."

There was no proof in the case, nor was any attempt made to prove the fact that William J. Byrnes in his lifetime requested any moneys of the defendant, or required any for his care. The testimony, on the contrary, showed that William had obtained $1,400 from other policies on his father's life, and that he had turned over $700 of this to the present plaintiff, his aunt, to hold for him; that he was being cared for in the hospital, where he was seriously ill.

We think that the evidence was insufficient to justify a finding that any trust was created, but, assuming that the court was justi-

fied in finding upon the testimony of Bellew that a trust was impressed, that trust would have been limited to an obligation to pay such moneys as were needed to pay for the care of William J. Byrnes during his lifetime, and there was no proof that any moneys were required for that purpose.

The judgment should be reversed, with costs, and the complaint dismissed, with costs.

MARTIN, P. J., TOWNLEY, DORE and COHN, JJ., concur.

Judgment unanimously reversed, with costs, and the complaint dismissed, with costs. Settle order on notice reversing findings inconsistent with this determination, and containing such new findings of fact proved upon the trial as are necessary to sustain the judgment hereby awarded.